UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Derek John Colwell

    v.                                Civil No. 10-cv-113-JD
                                        Opinion No. 2010 DNH 191

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R

Derek John Colwell seeks judicial review, pursuant to 42 U.S.C. 405(g), of the decision of the Commissioner of the Social Security Administration, denying his application for social security disability benefits.  Colwell contends that the Administrative Law Judge ("ALJ") erred in failing to find that he satisfied the requirements of a listed impairment.  The Commissioner moves to affirm the decision.


Background

Derek Colwell applied for disability benefits and child's insurance benefits, alleging disability since April 1, 2003, due to impairments caused by his mental health conditions.  His claims were denied, and he requested a hearing before an ALJ, which was held on September 30, 2009.  The ALJ denied his

application.  Colwell was approved for supplemental security income benefits as of April of 2008.

Colwell was born in 1985 and was twenty-four at the time of the hearing before the ALJ.  At that time, he was a junior at the University of New Hampshire.  His only past relevant work was making sandwiches in his brother's sandwich shop.

In July of 2002, Colwell was referred to Dr. George Nowak, a psychiatrist.  Dr. Nowak examined Colwell, diagnosed bipolar disorder and attention deficit disorder, and assigned a GAF ("Global Assessment of Functioning") score of 50, which indicates a serious impairment.  Colwell was hospitalized on September 20, 2002, where again he was diagnosed with bipolar disorder and attention deficit hyperactivity disorder.  In a subsequent examination on September 25, 2002, Dr. Nowak noted that Colwell was still experiencing symptoms and remained at risk.

In 2004, Colwell was treated by Dr. Joshua Gear, a psychiatrist.  Dr. Gear saw Colwell twice before March of 2004, when he wrote that Colwell's symptoms included inattention, poor impulse control, difficulty starting and completing tasks, and periods of irritability and depression.  Dr. Gear concluded that Colwell's symptoms had been present for the past several years and that the symptoms had a profound effect on his social and academic functioning.

Dr. Nowak completed a Mental Impairment Questionnaire on May 20, 2008, noting that Colwell's first appointment was in 2002 and that he had last seen Colwell that day, May 20, 2008.  Dr. Nowak stated that although Colwell's activities of daily living were "okay", he nevertheless was withdrawn with guarded speech and minimum responses; he was depressed, tearful, and anxious; his affect was flat and withdrawn; and his thoughts were paranoid with occasional hallucinations.  Dr. Nowak rated Colwell's attention, concentration, and memory as decreased; his social interactions as poor, and his task and stress performance as very poor.

A state consultant reviewed Colwell's records for the period between December of 2007 and June 25, 2008.  The consultant concluded that during that time Colwell's impairments equaled a listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.03, A & B, 1,2, & 3.

Colwell testified at the hearing on September 30, 2009.  He stated that he was a junior at the University of New Hampshire, that he had passed all of his courses but that he required accommodations, including a note taker, more time to take tests, and a separate room for taking tests when necessary.  He explained that his biggest problem was hallucinations that caused him to see other people as white flashes that changed to animal

shapes and caused him to feel paranoid when he sat with other people. He was hospitalized in March of 2008. Since then, Colwell testified that his medications have helped, and he has learned to ignore the hallucinations.

Despite being in college, Colwell lived at home with his mother and stepfather, which he said interfered with making friends at school. He had visitation with his five-year-old daughter, one day a week and every other weekend, with his mother's assistance. Colwell explained that his work as a sandwich maker in his brother's shop was possible only because his brother sheltered him. He said that he worked only twenty to thirty hours per week partly because he was playing hockey and going to school. He explained that even without school and hockey he could not work a forty-hour week because he was a "mess". He also explained that he did less work than other employees, that his brother covered for him, and that he had walked out three times without being fired.

A vocational expert testified at the hearing. In his first hypothetical, the ALJ asked the vocational expert if Colwell could do his prior work as a sandwich maker if he were limited to work with only moderately complex instructions with four to five steps, without fast paced production requirements, and with only occasional interaction with the public and co-workers. The

vocational expert said that such a worker could perform the sandwich maker job as it was described in the Dictionary of Occupational Titles.  In the second hypothetical, the ALJ limited the instructions to those with simple one or two steps, and the vocational expert responded that the worker could still do the sandwich-making job.  In the third hypothetical, the ALJ added a requirement that would allow the worker to have several unanticipated ten-minute breaks each day, and the vocational expert responded that limitation would rule out work as a sandwich maker as well as all other work.

The ALJ found that Colwell's schitzoaffective disorder, attention deficit hyperactivity disorder, and polysubstance abuse were severe impairments before he reached the age of twenty-two but did not meet or equal a listed impairment.  The ALJ found that Colwell was able to do work at all exertional levels but was limited to simple instructions with only one or two steps, work without fast-paced production requirements, and with only occasional interaction with the public and co-workers.  Based on those assessments, the ALJ concluded that Colwell could return to his prior work as a sandwich maker.  The Decision Review Board did not complete review within the time allowed, making the ALJ's decision the final decision of the Commissioner.

### Discussion

On review, Colwell contends that the ALJ erred in failing to find that he met the listed impairment titled "Schizophrenic, Paranoid and Other Psychotic Disorders" found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.03 ("Listing 12.03"). He argues that the ALJ improperly rejected all of the medical opinions in the record and instead relied on his own opinion. The Commissioner contends that the decision is based on substantial evidence.

A. Standard

The Commissioner uses a five-step process to determine whether an applicant is disabled for purposes of social security benefits. 20 C.F.R. § 404.1520. At the third step, the Commissioner will find the applicant disabled if he has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii).

Listing 12.03 is a listed impairment for "Schizophrenic, Paranoid and Other Psychotic Disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.03. Listing 12.03 applies when an applicant meets the following requirements:

>     A.  Medically documented persistence, either continuous
>     or intermittent, of one or more of the following:
>
>     1.  Delusions or hallucinations; or
>     2.  Catatonic or other grossly disorganized behavior; or
>     3.  Incoherence, loosening of associations, illogical
>     thinking, or poverty of content of speech if associated with
>     one of the following:
>          a.  Blunt affect; or
>          b.  Flat affect; or
>          c.  Inappropriate affect;
>     OR
>     4.  Emotional withdrawal and/or isolation;
>
>     AND
>
>     B.  resulting in at least two of the following:
>
>     1.  Marked restriction of activities of daily living;
>     or
>     2.  Marked difficulties in maintaining social
>     functioning or
>     3.  Marked difficulties in maintaining concentration,
>     persistence, or pace; or
>     4.  Repeated episodes of decompensation, each of
>     extended duration.
>
>     OR
>
>     C. [criteria not applicable in this case].

Id. The applicant bears the burden to show that he has an impairment that meets or equals a listed impairment. Torres v. Sec'y of Health & Human Servs., 870 F.2d 742, 745 (1st Cir. 1989). In this case, Colwell was required to prove that he met or equaled a listed impairment before March 21, 2005, for social security disability benefits, and before April 20, 2007, for child's insurance benefits.

On review, the court determines whether the ALJ found facts based on sufficient evidence and applied the correct legal standard to the factual findings. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., --- F.3d ---, 2010 WL 3584570, at *2 (1st Cir. Sept. 16, 2010).

B. Substantial Evidence

Colwell contends that the ALJ rejected the opinions of his two treating psychiatrists and the opinion of the state's consultant about the extent of his impairment and substituted his own opinion in place of all of the medical evidence. The Commissioner contends that the ALJ properly evaluated the physician's opinions and appropriately decided they were entitled to little weight.

"[An] ALJ [is] not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion." Nguyen, 172 F.3d at 35. In addition, an ALJ is "simply not qualified to interpret raw medical data in functional terms."

8

Id.  An ALJ is required to evaluate medical opinions to determine the weight to be afforded medical opinions based on the medical provider's examining and treatment relationship with the applicant, the amount of support provided for the opinion, the consistency between the opinion and the record as a whole, the specialization of the medical provider, and other factors such as the medical provider's understanding of the social security system and the degree of familiarity with the record.  20 C.F.R. § 404.1527(d).

In this case, the ALJ concluded that Colwell did not satisfy the requirements for a listed impairment under Listing 12.03 because he did not meet or equal the severity of the restrictions under Listing 12.03, paragraph B, within either of the applicable periods, that is, between April 1, 2003, and March 21, 2005, or between April 1, 2003, and April 20, 2007.  The ALJ concluded that Colwell had only mild restrictions in his daily living activities, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, and pace, and no episodes of decompensation until March of 2008.  In making those findings, the ALJ noted that Colwell went to school and worked in a sandwich shop and that Colwell testified that he had become accustomed to his symptoms.  He interpreted Colwell's other reported symptoms to indicate only moderate difficulties.

The record, however, does not support the ALJ's interpretation of Colwell's activities and abilities. The record evidence shows that Colwell was a junior at University of New Hampshire in September of 2009, when he was twenty-four years old. The record also shows that Colwell underwent a college physical examination in July of 2006, prior to attending Becker College in the fall of 2006, when Colwell was twenty-one years old. There is no cited evidence in the record that shows what Colwell did or was able to do between April 1, 2003, and either March 31, 2005, or April 20, 2007.

Colwell's testimony at the hearing suggests that he lived in New York and in Portsmouth, New Hampshire, at some time prior to 2009 but lacks any specifics about the time period and his activities.[1] Neither the record nor the ALJ's decision address Colwell's experience at Becker College. Other than the medical records, the administrative record provides little information about Colwell's background prior to when he testified at the hearing in September of 2009. Therefore, Colwell's level of functioning, activities, and abilities during the relevant periods, 2003 to 2005 and 2003 to 2007, is not demonstrated in

---

[1] Becker College is located in Massachusetts.

the record.  As a result, the ALJ's assessment is not based on substantial evidence pertinent to the relevant period.

Colwell testified that at the University of New Hampshire, he required significant accommodations to maintain his academic standing.  Colwell explained that he saw hallucinations while sitting in class and did not hear much of what the professors were saying.  He had an assigned note taker because he could not pay attention and take notes himself.  Colwell also testified that he required fifty percent more time for test taking and that he was unable to meet the language requirement because of his difficulty in concentrating.

The ALJ asked Colwell about his progress since his hospitalization in 2008.  Colwell described some progress and said that the medication he was taking had a positive effect.  The ALJ asked about Colwell's schedule for attending classes at that time.  The ALJ asked nothing about Colwell's condition or impairments during the relevant period, before April 20, 2007, or before March 31, 2005.

Colwell's attorney asked Colwell about his symptoms before his hospitalization in March of 2008.  Colwell answered that he had extreme paranoia, hallucinations, and loss of sleep.  Colwell then briefly reviewed his treatment for mental health issues and

explained that for a while, he lived on his own and did not have insurance to cover treatment.

In his decision, the ALJ rejected the opinions of treating psychiatrists Dr. Nowak and Dr. Gear and the opinion of the state consultant about the severity of Colwell's mental illness.  Those were the only medical opinions in the record, pertaining to Colwell's mental health issues.  The three opinions were consistent with each other in concluding that Colwell's mental health issues from 2002 through 2008 had a profound and negative effect on his ability to function.  The state consultant also determined that Colwell equaled the requirements of Listing 12.03 for a listed impairment between December of 2007 and June 25, 2008.

The ALJ gave Dr. Nowak's opinions, based on examinations in 2002 and in 2008, and concluding that Colwell's attention, concentration, and memory were decreased, his social interactions were poor, and his task and stress performance were very poor, little weight.  The ALJ found Dr. Nowak's opinions to be inconsistent with the record, without explaining exactly what record evidence contradicted Dr. Nowak's opinions.  It appears that the ALJ surmised that Colwell was functioning at a higher level than reported by Dr. Nowak, based on his activities of going to college and working at the sandwich shop.

The ALJ also found that Dr. Gear's opinions in 2004 that Colwell's symptoms had a profound effect on his social and academic performance were inconsistent with Colwell's reported abilities. The ALJ further discounted Dr. Gear's opinion because he met with Colwell only twice. The ALJ rejected the state consultant's opinion, finding that Colwell equaled the requirements of § 12.03, because it was inconsistent with Colwell's testimony and Colwell's demonstrated activities.

The ALJ based his decision on his own interpretation of Colwell's impairments, apparently evaluated in light of Colwell's activities at the time of the hearing rather than on evidence of his activities during the relevant periods. The record does not support the ALJ's conclusion that Colwell's abilities and activities during the relevant period, before April of 2007, contradict Dr. Gear's and Dr. Nowak's opinions about the severity of Colwell's condition. In addition, the state consultant's opinion that Colwell equaled Listing 12.03 is supported by Dr. Gear's and Dr. Nowak's opinions and is not contradicted by the record between December of 2007 and June of 2008.[2]

---

[2]The Commissioner points out that the state consultant's opinion, covering the period between December 1, 2007, and June 25, 2008, and Dr. Nowak's 2008 opinion post dated the end of the application period. While that is true, that opinion is consistent with Dr. Nowak's earlier opinion and Dr. Gear's opinion in 2004.

As such, substantial evidence does not exist in the record to support the ALJ's decision. Of particular concern is the lack of medical opinion evidence to support the ALJ's determination that Colwell did not meet or equal Listing 12.03 before April 20, 2007. The ALJ relies heavily on Colwell's activities as described at the hearing, none of which appear to relate to the relevant period between 2003 and 2007.

The ALJ improperly ignored the medical opinions in the record. In addition, the ALJ's interpretation of the factual background is not supported by the record. Therefore, the Commissioner's decision cannot be affirmed.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse and remand the Commissioner's decision (document no. 8) is granted. The Commissioner's motion to affirm (document no. 9) is denied.

The case is remanded under sentence four. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

                                          */s/ Joseph A. DiClerico, Jr.*
                                          Joseph A. DiClerico, Jr.
                                          United States District Judge

November 10, 2010

cc:   Christopher G. Roundy, Esquire
      Gretchen Leah Witt, Esquire